FILED '09 MAR 05 15:37 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel, TAMI M. CHARTRAW,<br><br>    Plaintiff,<br><br>    v.<br><br>CASCADE HEALTHCARE COMMUNITY,<br>INC., dba St. Charles Medical<br>Center - Bend, St. Charles<br>Medical Center - Redmond,<br><br>    Defendant.<br><br>TAMI M. CHARTRAW,<br><br>    Plaintiff,<br><br>    v.<br><br>CASCADE HEALTHCARE COMMUNITY,<br>INC., and HEALTH FUTURE, LLC,<br><br>    Defendants. | Civ. No. 05-708-AA<br>(Lead Case)<br>(Consolidated Cases)<br><br>Civ. No. 05-915-AA<br><br>ORDER AND OPINION |

Tom Steenson
Zan Tewksbury
Steenson, Schumann, Tewksbury, Creighton
815 S.W. Second Avenue, Suite 500

1 - OPINION AND ORDER

Portland, OR 97204
     Attorneys for plaintiff

Joel Wilson
John M. Kruetzer
Bullivant Houser Bailey, PC
888 S.W. Fifth Avenue, Suite 300
Portland, OR 97204
     Attorneys for defendant

AIKEN, Judge:

Plaintiff Tami M. Chartraw filed this action against Cascade Healthcare Community, Inc. ("Cascade") and Health Future LLC alleging violations of the Federal False Claims Act, gender discrimination and retaliation under Title VII and Or. Rev. Stat. § 659A.030, common law wrongful discharge, and defamation. Since filing, Chartraw has settled with Health Future, and only her claims against Cascade remain.

Cascade moves for summary judgment on three of plaintiff's claims: wage discrimination under Title VII and Or. Rev. Stat. § 659A.030, wrongful discharge, and defamation. Cascade's motion for partial summary judgment is granted on all three claims.

## I. BACKGROUND

In December 2002, Cascade, an Oregon not-for-profit corporation that operates health care delivery systems, hired plaintiff as a Corporate Compliance Officer. Plaintiff's job was to ensure Cascade was in compliance with healthcare regulations, including the Health Insurance Portability and Accountability Act ("HIPAA") and other federal laws. Her duties and responsibilities included detecting and reporting alleged fraud within Cascade.

2 - OPINION AND ORDER


Portland, OR 97204
     Attorneys for plaintiff

Joel Wilson
John M. Kruetzer
Bullivant Houser Bailey, PC
888 S.W. Fifth Avenue, Suite 300
Portland, OR 97204
     Attorneys for defendant

AIKEN, Judge:

Plaintiff Tami M. Chartraw filed this action against Cascade Healthcare Community, Inc. ("Cascade") and Health Future LLC alleging violations of the Federal False Claims Act, gender discrimination and retaliation under Title VII and Or. Rev. Stat. § 659A.030, common law wrongful discharge, and defamation. Since filing, Chartraw has settled with Health Future, and only her claims against Cascade remain.

Cascade moves for summary judgment on three of plaintiff's claims: wage discrimination under Title VII and Or. Rev. Stat. § 659A.030, wrongful discharge, and defamation. Cascade's motion for partial summary judgment is granted on all three claims.

## I. BACKGROUND

In December 2002, Cascade, an Oregon not-for-profit corporation that operates health care delivery systems, hired plaintiff as a Corporate Compliance Officer. Plaintiff's job was to ensure Cascade was in compliance with healthcare regulations, including the Health Insurance Portability and Accountability Act ("HIPAA") and other federal laws. Her duties and responsibilities included detecting and reporting alleged fraud within Cascade.

When plaintiff started at Cascade her yearly salary was $56,888. Plaintiff alleges that Cascade offered a less-qualified and similarly-situated male employee, Wade Miller, a starting yearly salary of $75,000 and approximately $3,000 in relocation benefits not offered to plaintiff.

While employed at Cascade, plaintiff received two written performance evaluations by Jim Diegel, Senior Vice President of Operations. In both evaluations plaintiff received high ratings.

In February 2004, both plaintiff and Miller received pay increases. Plaintiff received a twelve percent increase, which raised her salary to $82,000, while Miller's salary was raised to $80,000. Consequently, after February 2004 plaintiff was paid more than her male-counterpart Miller.

In June 2004, Jim Hobbs became Cascade's new president and CEO. Hobbs began conducting interviews of leaders, managers, and physicians in Cascade to gauge the condition of the organization. Hobbs also hired an outside consultant, Tim Timmons of Health Future, to compile a report on the effectiveness of Cascade's compliance program. Plaintiff alleges that Timmons was told to gather only negative comments about plaintiff's performance, and that Timmons admitted this to her.

In July 2004, plaintiff reported federal law violations regarding patient privacy, kickbacks, and over-billing to Cascade's upper management. Plaintiff alleges that after she brought these violations to Cascade's attention she was treated with increasing hostility. Plaintiff claims Cascade's managers asked her

3 - OPINION AND ORDER

repeatedly to resign and suggested she would be drowned if she went on a work-related rafting trip. Plaintiff also alleges she was told by a vice president to "sit down and shut up," and by Hobbs that, "You are a smart girl, and smart girls get into trouble." Despite such treatment, plaintiff alleges she received no notice that her job was in jeopardy before her termination.

In August 2004, Timmons completed the Compliance Program Effectiveness Assessment report ("Report") and provided it to Hobbs and Diegel. Among the findings, the Report stated, "There is virtually no confidence in (and in some cases strong animosity toward) the [plaintiff]." The Report also stated plaintiff's compliance program was not effectively implemented, lacked an effective leader, and suffered from a pervasive atmosphere of fear and intimidation.

In September 2004, shortly after the Report was issued, plaintiff was fired. After plaintiff's termination, Cascade hired Timmons to replace her.

## II. DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is

4 - OPINION AND ORDER

such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## A. Wage Discrimination

Plaintiff alleges that Cascade discriminated against her in the terms, conditions, and privileges of her employment in violation of Title VII and Or. Rev. Stat. § 659A.030, by paying her less than Wade Miller, a less-qualified similarly-situated male employee. Cascade moves for summary judgment on plaintiff's wage discrimination claim, arguing that it is time barred. I agree that plaintiff's claim is barred by the statute of limitations.

The statute of limitations for a Title VII claim in Oregon is 300 days. 42 U.S.C. § 2000e-5(e)(1); see also Delima v. Home Depot U.S.A., Inc., 2008 WL 1882842, at *21 (D. Or. Apr. 23, 2008).

5 - OPINION AND ORDER

Similarly, under Oregon Revised Statues, a plaintiff must bring a claim of employment discrimination within one year of the allegedly unlawful conduct. Or. Rev. Stat. § 659A.820(2).

Cascade argues that because the last discriminatory salary act alleged by plaintiff was made in February 2004, and plaintiff did not file her EEOC and BOLI claim until March of 2005, her wage discrimination claim is barred by the statute of limitations.

In so arguing, defendant initially relied on <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618 (2007). In <u>Ledbetter</u>, the United States Supreme Court held that the statute of limitations for a Title VII claim begins to run when a "discrete act" takes place at a particular point in time. <u>Id.</u> at 992 (quoting <u>Nat'l Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110-11 (2002)). "A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." <u>Id.</u> In other words, under <u>Ledbetter</u>, a discriminatory salary decision constitutes a discrete act, but the subsequent receipt of wages based on that decision is not. Therefore the statute of limitations began to run when the salary decision was made and did not reset with the issuance of each pay check.

However, while this case was pending, Title VII was amended to abrogate the <u>Ledbetter</u> decision. Title VII now states:

> For the purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a

6 - OPINION AND ORDER

>    discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, <u>including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice</u>.

S. 181, 111th Cong. § 3 (2009) (emphasis added). This amendment takes effect retroactively to May 28, 2007, the date of the Supreme Court's decision in <u>Ledbetter</u>, and applies to any pending case. <u>Id.</u> at § 6.

At oral argument Cascade conceded the change in law, but argued that despite the amendment, plaintiff's wage-gender discrimination is nonetheless barred by the statute of limitations. I agree. While plaintiff allegedly received a lower salary than Miller when first employed by Cascade, plaintiff's salary was increased in February 2004 and she was paid more than her similarly-situated male counterpart. Therefore, based on her own allegations, plaintiff suffered no wage discrimination after February 2004. Plaintiff did not file her claim with BOLI and the EEOC until March 2005, more than one year after she last suffered an alleged injury.

Therefore, plaintiff's wage discrimination is time-barred, regardless of the recent Title VII amendments, and summary judgment is granted on this claim.

### B. Common Law Wrongful Discharge

Plaintiff alleges Cascade wrongfully discharged her in retaliation for bringing gender-based discrimination concerns to

7 - OPINION AND ORDER

Cascade's management.

Cascade argues that plaintiff cannot pursue a common law claim for wrongful discharge because she has adequate statutory remedies under Title VII. Such remedies include equitable relief, punitive damages, attorney fees, and compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. 42 U.S.C. §§ 1981a(b)(3) and 2003-5(g)(1). Cascade argues that these remedies are adequate to protect plaintiff's employment related rights, and therefore plaintiff is precluded from pursing a wrongful discharge claim.

Plaintiff responds that her wrongful discharge claim survives because she was fulfilling an important public duty of bringing her employer in compliance with federal law, i.e. HIPAA. This argument is unpersuasive. Plaintiff did not plead wrongful discharge in retaliation for her efforts to comply with HIPAA. Rather plaintiff expressly alleges a wrongful discharge claim based on "asserting an employment related right of important public interest: opposing unlawful gender/sex discrimination." Third Amended Complaint, p. 18. Even if read liberally, this claim for relief cannot be interpreted to allege wrongful discharge for asserting a public duty of bringing her employer in compliance with HIPAA. Because the response to the motion for summary judgment is the first time plaintiff raised this claim, it is inappropriate for the court to address it. Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1050 n.5 (9th Cir. 1987).

8 - OPINION AND ORDER

Furthermore, I agree with Cascade that plaintiff has adequate remedies under Title VII for the public policy claim she did plead: opposing unlawful gender discrimination. A common law wrongful discharge claim is not available in Oregon if (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy regardless of whether the courts perceive that remedy to be adequate.[1] Draper v. Astoria Sch. Dist. No. 1C, 995 F. Supp. 1122, 1130-31 (D. Or. 1998). "[T]he question is not whether the remedy [under Title VII or § 659A.030] is 'the best possible remedy' but merely whether it is sufficient to 'adequately protect the employment related right.'" Id. at 1134.

In Holien v. Sears, Roebuck and Co., the Oregon Supreme Court

---

[1] The Federal District Courts and Oregon Court of Appeals have differed in their application of this legal standard. The district courts have applied the test in the disjunctive, while the Oregon Court of Appeals has found that *both* elements must be established in order to preempt a wrongful discharge claim. Olsen v. Deschutes County, 204 Or. App. 7, 14, 127 P.3d 655, rev. den'd, 341 Or. 80, 136 P.3d 1123 (2006).
The Oregon Supreme Court has not conclusively spoken on this issue. Adams v. Home Depot U.S.A., Inc., 2007 WL 4565163, at *29 (D. Or. Dec. 19, 2007). Regardless, the Oregon Court of Appeals has recognized that when a statute is silent with respect to the legislature's intent to establish an exclusive remedy, the existence of adequate remedies can imply such intent. Id. (quoting Olsen, 204 Or. App. at 16). Therefore, this court will apply the disjunctive test in line with the other decisions of the federal district courts. See McCubbrey v. Veninga, 39 F.3d 1054, 1055 (9th Cir. 1994) (holding a federal court is not bound by the decisions of a state intermediate appellate court if it determines that the state's highest court would reach a different conclusion).

9 - OPINION AND ORDER

held that the plaintiff could bring her wrongful discharge claim under state common law because Title VII and the Oregon statutory equivalent did not allow for compensatory damages, thus failing to capture the personal nature of the injury done to the plaintiff and appreciate the relevant dimensions of the problem. Holien, 298 Or. 76, 98, 689 P.2d 1292 (1984) The Court concluded the available remedies of reinstatement, back pay, and injunctive relief could not adequately compensate a plaintiff. Id. at 97; see also Dunn v. CSK Auto Inc., 2006 WL 1491444 (D. Or. May 22, 2006); Goodlette v. LTM, Inc., 129 Or. App. 62, 974 P.2d 1354 (1994); Kofoid v. Woodard Hotels, Inc., 78 Or. App. 283, 716 P.2d 771 (1986).

Since the Oregon Supreme Court's decision in Holien, Title VII has been amended to include remedies for compensatory damages, including "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary losses . . . ." 42 U.S.C. § 1981a(b)(3). Therefore, Title VII now provides remedies for the personal injuries that were absent in Holien. Even though compensatory damages are capped, the question is not whether the remedy is the "'the best possible remedy' or 'identical to the tort remedy' but merely whether it is sufficient to 'adequately protect the employment related right.'" Draper, 995 F. Supp. at 1130-31. The fact plaintiff can recover these damages is enough to ensure their adequacy. Gahano v. Sundial Marine & Paper, 2007 WL 4462423, at *15 (D. Or. Dec. 14, 2007). Thus, plaintiff's wrongful discharge claim based on retaliation cannot go forward because the statutory remedies under Title VII address the concerns

10 - OPINION AND ORDER

raised by Oregon Supreme Court in <u>Holien</u>.

Accordingly, summary judgment on plaintiff's wrongful discharge claim is granted because she has adequate remedies under Title VII.

### C. Defamation

Plaintiff alleges that by requesting the Report from Tim Timmons and Health Future, Cascade knowingly published false and defamatory statements about her that directly attacked her professional competence, reputation, and character. Cascade argues summary judgment is appropriate because the statements in the Report are true and not capable of defamatory meaning, or in the alternative, because the statements are privileged. Plaintiff responds that a genuine issue of material fact remains as to whether the statements are true and whether Cascade abused and therefore lost the qualified privilege.

A defamatory statement is one that subjects another to hatred, contempt, or ridicule; or tends to diminish the esteem, respect, goodwill, or confidence in which the other is held; or to excite adverse, derogatory or unpleasant feelings or opinions against the other. <u>Reesman v. Highfill</u>, 327 Or. 597, 603, 965 P.2d 1030 (1998). To be actionable, the communication must be both false and defamatory. <u>Id.</u> Truth is a complete defense to an action for defamation. <u>Bahr v. Statesman Journal</u>, 88 Or. App. 419, 422, 745 P.2d 807 (1987). Regardless of whether the statements in the Report are true, I find that the statements are protected by qualified privilege and that Cascade did not abuse this privilege.

11 - OPINION AND ORDER

A qualified privilege protects statements made by employers about employees if (1) the statement was made to protect the interests of the employer; or (2) the statement was made on a subject of mutual concern to the employer and the employees to whom the statement was made. Id. (citing Wattenburg v. United Med. Lab, 269 Or. 377, 380, 525 P.2d 113 (1974)).

Cascade argues the statements in the Report are privileged because the statements protected Cascade's interest in ensuring the effectiveness of its compliance program and were shared only with Hobbs and Diegel, then president and vice president of Cascade. I agree and find that the Report was privileged because it was prepared to protect Cascade's interest and was shared with a few number of employees with mutual concerns.

Plaintiff does not deny the Report may be privileged but argues that Cascade abused the qualified privilege. Plaintiff contends that Cascade and the author of the report, Timmons, lacked reasonable grounds to believe the statements about plaintiff were true because: (1) plaintiff had received two positive performance evaluations; (2) plaintiff received an unusually large pay increase based on her performance; (3) plaintiff was met with hostility when she reported compliance violations; (4) plaintiff received no complaints about her alleged performance deficiencies; (5) Timmons wrote nothing positive about plaintiff in the Report; and (6) Timmons lacked objectivity in preparing the Report because he wanted plaintiff's position.

A privileged communication is not actionable unless the

12 - OPINION AND ORDER

speaker abuses the privilege. Ishikawa v. Delta Air Lines, Inc., 149 F. Supp. 2d 1246, 1254 (D. Or. 2001). The qualified privilege may be abused if the speaker does not believe in good faith that the statement is true or if the speaker lacks reasonable grounds to believe the statement is true. Id. (citing Cooper v. PGE, 110 Or. App. 581, 590, 824 P.2d 1152 (1992)). To survive a motion for summary judgment on this issue, "a plaintiff must offer some evidence creating an issue of fact about the mental state of the speaker at the time the statement was made." Id. (citing Bickford v. Tektronix, Inc., 116 Or. App. 547, 551, 842 P.2d 432 (1992)).

Thus, plaintiff must present evidence creating an issue of fact concerning the mental state of the speaker, Timmons, at the time the statement was made. Id. Plaintiff maintains that Timmons told her that he was asked to gather only negative information about her.

However, plaintiff does not offer any evidence -- such as affidavits or deposition testimony -- that her co-workers did not make those statements; or that it was unreasonable for Timmons to believe that her co-workers had little confidence in plaintiff and felt animosity towards her; or that plaintiff's co-workers lacked confidence in the compliance program. Employers are entitled "to form an opinion about the reason for [a] plaintiff's discharge . . . . The fact that the employment record also contains positive entries, does not, standing alone, permit the contrary inference that [the supervisors and employees] did not believe their statements were true or that they lacked reasonable grounds to

13 - OPINION AND ORDER

believe their statements were true." <u>Bickford</u>, 116 Or. App. at 551. And even if Timmons was told only to collect negative information about plaintiff, she presents no evidence that such negative information was false.

In sum, plaintiff offers no evidence to create a genuine issue of material fact that Timmons did not believe in good faith in the veracity of the statements in the Report, or that Timmons did not report the information accurately. Therefore, I grant summary judgment on plaintiff's defamation claim because the statements were privileged and Cascade did not abuse the privilege.

### III. CONCLUSION

For the reasons discussed above, defendant's Motion for partial summary judgment (doc. 61) is GRANTED.

IT IS SO ORDERED.

Dated this __5__ day of March, 2009.

_____
Ann Aiken
United States District Judge

14 - OPINION AND ORDER